AO-106 (Rev. 06/09)-Application for Search Warrant

# UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

| In the Matter of the Search of | ) |
| *A 2017 Ford Fusion Oklahoma AL7006* | ) Case No. 25-mj-756-CDL |
| | ) |
| | ) **FILED UNDER SEAL** |
| | ) |

*FILED*
*SEP 05 2025*
*Heidi D. Campbell, Clerk*
*U.S. DISTRICT COURT*

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A3"

located in the  Northern  District of  Oklahoma , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
| --- | --- |
| 18 U.S.C. §§ 2252A(a)(6) and (b)(1) | Distribution of Child Pornography to a Minor |
| 18 U.S.C. §§ 2252(a)(2) and (b)(1) | Receipt/Distribution of Child Pornography |
| 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) | Possession of and Access with Intent to View Child Pornography |

The application is based on these facts:

**See Affidavit of SA Brian Dean, attached hereto.**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of  ___  days (give exact ending date if more than 30 days:  _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brian Dean, Special Agent, FBI
*Printed name and title*

Subscribed and sworn to by phone.

Date:  September 5, 2025

City and state:    Tulsa, Oklahoma

_____
*Judge's signature*

Christine D. Little, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **In the Matter of the Search of** | **Case No.** _____ |
| **A 2017 Ford Fusion Oklahoma** | |
| **AL7006** | **FILED UNDER SEAL** |

### Affidavit in Support of an Application
### Under Rule 41 for a Warrant to Search and Seize

I, Brian S. Dean, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application under Rule 41 of the

Federal Rules of Criminal Procedure for two separate search warrants for (1) the

person of Darell Shannon Grimm (**"GRIMM"**), (2) the entire property located at

**643 E. 42ⁿᵈ St. N., Tulsa, OK 74106** (**"TARGET PREMISES"**) and (3) a 2017

Ford Fusion bearing Oklahoma AL7006 (**"VEHICLE"**), as described in separate

Attachments A1, A2, and A3 for the items further detailed in Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C)

and am authorized to request these search warrants because I am a government

agent who is engaged in enforcing federal criminal laws and I am within the category

of officers authorized by the Attorney General to request such warrants. I am a

Special Agent with the Federal Bureau of Investigation assigned to the Tulsa,

Oklahoma Resident Agency. As a Special Agent, my duties include investigating

violations of federal criminal law and threats to national security. In addition to

formalized training, I have received extensive training through my involvement in an

array of investigations working alongside experienced law enforcement officers at

both the federal and local level. My investigations include, but are not limited to,

drug and gang violations, violent crimes, Indian country violations,

counterterrorism, cybercrimes, and crimes against children.

3. Specifically, I have extensive experience working cases involving child

pornography and child exploitation in violation of 18 U.S.C. §§ 2251, 2252, 2252A,

and 2422 respectively. All of these cases have required the review of child

pornography (as defined in 18 U.S.C. § 2256) in all forms of media including

computer media. As such, I am familiar with the tactics utilized by individuals who

collect, distribute, and or produce child pornographic material, as well as groom

children to participate in sexually explicit conduct.

4. I am familiar with the facts and circumstances of this investigation. The

facts set forth in this affidavit are based on my personal observations, knowledge

obtained from other law enforcement officers, my review of documents related to this

investigation, conversations with others who have personal knowledge of the events

and circumstances described herein, and a review of open-source information

including information available on the Internet. This affidavit is submitted for the

limited purpose of establishing probable cause in support of the application for a

search warrant, and therefore does not set forth each and every fact I or others have

learned during the course of this investigation.

5. Based on my training, experience, and the facts as set forth in this affidavit, there is probable cause to believe violations of 18 U.S.C. §§ 2252A(a)(6) and (b)(1) (Distribution of Child Pornography to a Minor); 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Receipt/Distribution of Child Pornography); and 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of and Access with Intent to View Child Pornography) have been committed, and evidence of these crimes will be located in medium maintained either on **GRIMM's** person, in the **TARGET PREMISES**, and or in the **VEHICLE** as further described in Attachments A1, A2, and A3.

### Jurisdiction

6. "[A] warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States." 18 U.S.C. § 3103a.

7. The requested search is related to the following violations of federal law:

a. Title 18, United States Code, Sections 2252A(a)(6) and (b)(1) prohibits any person from knowingly distributing, offering, sending, or providing to a minor any visual depiction, including any photograph, film, video, picture, or computer generated image or picture, whether made or produced by electronic, mechanical, or other means, where such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct, which distribution, offer, sending, or provision is accomplished using the mails or any means or facility of interstate or foreign commerce, for the purposes of inducing or persuading a minor to participate in activity that is illegal.

b. Title 18, United States Code, Sections 2252(a)(2) and (b)(1) prohibit any person who knowingly receives or distributes any child pornography and or any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign

3

commerce by any means.

c. Title 18, United States Code, Sections 2252(a)(4)(B) and (b)(2) prohibit any person from knowingly possessing or accessing with the intent to view, or attempting or conspiring to possess or access with the intent to view, one or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

8. Venue is proper because the person and or property described in this affidavit is located within the Northern District of Oklahoma. Fed. R. Crim. P. 41(b)(1).

## Definitions

9. The following definitions, inclusive of all definitions contained in 18 U.S.C. § 2256, apply to this affidavit and the attachments incorporated herein:

a. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually

4

explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct;

b. "Internet Protocol address" or "IP address" refers to a unique number used by a computer or electronic device to access the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses may also be static, which means the ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet

c. "Electronic Mail," commonly referred to as email (or e-mail), is a method of exchanging digital messages from an author to one or more recipients. Modern email operates across the Internet or other computer networks. Email systems are based on a store-and-forward model; that is, email servers accept, forward, deliver, and store messages. Neither the users nor their computers are required to be online simultaneously; they need only connect briefly, typically to an email server, for as long a period of time as it takes to send or receive messages. One of the most commons methods of obtaining an email account is through a free web-based email service provider such as, Outlook, Yahoo, or Gmail. Anyone with access to the Internet can generally obtain a free web-based email account;

d. "Cloud storage service" refers to a publicly accessible, online storage provider that can be used to store and share files in large volumes. Users of cloud storage services can share links and associated passwords to their stored files with others

5

in order to grant access to their file collections. Such services allow individuals to easily access these files through a wide variety of electronic devices such as desktop computers, laptops, mobile phones or tablets, from anywhere. Many services provide free access up to a certain size limit;

e. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state;

f. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years old;

g. "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form;

h. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person; and

i. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of

6

conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

j. "Computer," as defined in 18 U.S.C. § 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

### Characteristics Common to Individuals who Exhibit a Sexual Interest in Children and Individuals who Distribute, Receive, Possess and/or Access with Intent to View Child Pornography

10. Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who sexually exploit children, and who produce, distribute, receive, possess, and/or have access with intent to view child pornography:

a. Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity, or from sexualized conversations with children;

b. Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media and at times, they may use these

7

materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts;

c. Such individuals almost always possess and maintain digital or electronic files of child pornographic material, that is, their pictures, videos, photographs, correspondence, mailing lists, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, videos, photographs, correspondence, and mailing lists for many years;

d. Likewise, such individuals often maintain their child pornography images and sexually explicit or suggestive materials in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis;

e. Based on my training and experience, I also know that such individuals have taken their electronic devices and storage media, which contain their collections of child pornography, with them when they move or change residences;

f. Such individuals may also take it upon themselves to create their own child pornography or child erotica images, videos or other recordings, or engage in contact sex offenses with children. These images, videos or other recordings may

8

be taken or recorded covertly, such as with a hidden camera in a bathroom. Studies have shown there is a high cooccurrence between those who traffic in child pornography and commit sex offenses with children. Such individuals may also attempt to persuade, induce, entice, or coerce child victims in person or via communication devices to self-produce and send them child pornography or to meet in person for sex acts. These images, videos or other recordings are often collected, traded, or shared;

g. Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted"[1] it;

h. Such individuals also may correspond with and/or meet others to share information and materials. This correspondence from other child pornography distributors/possessors is often concealed, rarely destroyed, and can contain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography;

---

[1] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012) (Posner, J.) (collecting cases, e.g., *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370–71 (4th Cir. 2010); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010)).

i.  Based on my training and experience, I know that such individuals may use their financial information to buy and sell child pornography online and purchase software used to mask their online activity from law enforcement. For instance, individuals may purchase cryptocurrency such as Bitcoin to buy and sell child pornography online. The use of cryptocurrency provides a level of anonymity because it masks the user's identity when conducting online financial transactions and provides a means of laundering illicit proceeds. Financial information may provide a window into the identities of individuals seeking to buy or sell child pornography online by tying the illicit transactions back to the user. Financial information contained on an electronic device containing child pornography may also provide indicia of ownership. Further, based on my training and experience, I know individuals involved in the trafficking of child pornography may use sophisticated software, such as router configuration software, virtual private networks, proxy servers, cryptocurrency exchanges, or other anonymizing software, in conjunction with these illicit financial transactions to provide dual layers of anonymity and prevent law enforcement detection. Financial information may indicate which services were purchased to obscure an individual's identity;

j.  Such individuals prefer not to be without their child pornography for any prolonged period of time. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world. Thus, even if **GRIMM** uses a portable device (such as a

10

mobile phone) to access the internet and child pornography, it is more likely than not that evidence of this access will be found in his home, the **TARGET PREMSISES**, and/or the **Subject Vehicle**, and/or the person of **GRIMM**, as set forth in Attachments A1, A2, and A3.

### Probable Cause

11. On August 23, 2025, an anonymous person, hereinafter Witness 1, reported to the Tulsa Metro Crime Stoppers that a friend of his aunt by the name of Darrell Grimm (**GRIMM**) sent child sexual abuse material (CSAM) via TikTok and Telegram to his 13-year-old brother (MV). Witness 1 provided a screenshot of **GRIMM**'s TikTok account as well as a screenshot of a conversation on TikTok telling the MV to contact him on Telegram. Witness 1 also provided a screenshot of the Telegram account from which **GRIMM** allegedly sent CSAM. The account connected phone number was listed as +1 (918) 330-1101. Witness 1 provided **GRIMM's** full name as Darrell Shannon Grimm, and identified his email address as dsgrimm76@gmail.com.

12. On August 24, 2025, NCMEC received CyberTip 218737742 from the National Threat Operations Center. The reporting party, hereinafter Witness 2, stated **GRIMM** contacted his 13-year-old cousin to solicit sex from him. Tulsa Police Detectives subsequently contacted Witness 2 who provided screenshots and screen

recordings[2] of a Telegram account believed to be associated with **GRIMM** sharing CSAM. In one of the screen recordings, the account can be seen sending multiple files of CSAM to the account belonging to the MV. A connected phone number for the target account is displayed as +1 (918) 330-1101, as is the username "@lifeinmiddleage", and at the end of the video, the target account user also provides an email of dsgrimm76@gmail.com.

13. On September 2, 2025, Detectives served legal process to Google for data associated with dsgrimm76@gmail.com, and on September 4, 2025, Google provided the return digitally via their law enforcement portal. Upon review, investigators located at least 19 videos of CSAM. A few of these CSAM videos appeared to have been sent to another person via email with the caption, "Wanna buy a boy". A brief description of some of the videos are provided below:

- Video 1: Depicted an unknown sex minor (estimated to be between the ages of 1-3) with no pants on laying on his back on top of bed. An adult male is laying over the minor with no pants on. The adult male inserts his erect penis into the minor and thrusts his hips back and forth.

- Video 2: Depicted a minor male (estimated to be between the ages of 3-5) wearing pants and a shirt is running around playing. An adult male is seated on a sofa recording from his point of view. The adult male's erect penis is exposed and he is masturbating. The minor male walks over and the adult male inserts his erect penis into the minor's mouth for a few seconds before the minor continues playing.

14. The listed subscriber for dsgrimm76@gmail.com was "Life In Middle Age" with a date of birth of March 5, 1976 and a recovery phone number of (918)

---

[2] A screen recording or "screencast" is the process of capturing video footage of what appears on a computer or device screen, including mouse movements and actions. It may also include audio narration or commentary. Screen recordings are created using screen capture software which readily available for most modern day cellular devices.

330-1101[3]. Of note, "Life In Middle Age" is the same username for the Telegram account originally identified by Witness 2. March 5, 1976, is **GRIMM**'s date of birth, and open-source research and law enforcement databases has (918) 330-1101 listed as **GRIMM**'s current phone number. Investigators also located multiple "selfie" style pictures within the Google account which closely resembled **GRIMM**'s Oklahoma driver's license photo, a Planet Fitness membership agreement form for **GRIMM** with 643 E. 42nd St. N., Tulsa, OK 74106 **(TARGET PREMISES)** listed as his address, as well as several bills addressed to **GRIMM** from Oklahoma Natural Gas for services rendered at the **TARGET PREMISES.**

15. On September 4, 2025, investigators conducted surveillance of the **TARGET PREMISIS** and observed a 2017 Ford Fusion with Oklahoma license plate AL7006 **(VEHICLE)** parked in the driveway. A records check confirmed the **VEHICLE** was registered to **GRIMM** at the **TARGET PREMSISES.**

16. Therefore, based on training and experience, I submit there is also probable cause to believe violations of 18 U.S.C. §§ 2252A(a)(6) and (b)(1) (Distribution of Child Pornography to a Minor); 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Receipt/Distribution of Child Pornography); and 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of and Access with Intent to View Child Pornography) have been

---

[3] A recovery number or recovery email address is a communication account a user provides to an electronic service provider in order to receive SMS / text messages, phone calls, or emails containing account authentication information. This account helps users to reset their password when locked out and works to prevent unauthorized access. As such, recovery numbers or email addresses are most often utilized and controlled exclusively by the end user.

committed, and evidence of these crimes will be located in medium maintained either on **GRIMM's** person, in the **TARGET PREMISES**, or in the **VEHICLE** as further described in Attachments A1, A2, and A2.

### Background on Child Pornography, Computers, and the Internet

17. Based on training, experience, and knowledge I have gleaned from other experienced law enforcement officers as it pertains to computer-related crimes, I know the following:

a. Computers, smartphones[4] and digital technology are the primary way in which individuals interested in child pornography interact with each other. Computers and smartphones basically serve four functions in connection with child pornography: production, communication, distribution, and storage;

b. Digital cameras and smartphones with cameras save photographs or videos as a digital file that can be directly transferred to a computer by connecting the camera or smartphone to the computer, using a cable or via wireless connections such as "WiFi" or "Bluetooth." Photos and videos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone. These memory cards are often large enough to store thousands of high-resolution photographs or videos;

---

[4] Smartphones are a class of mobile phones and of multi-purpose mobile computing devices. They are distinguished from feature phones by their stronger hardware capabilities and extensive mobile operating systems, which facilitate wider software, internet (including web browsing over mobile broadband), and multimedia functionality (including music, video, cameras, and gaming), alongside core phone functions such as voice calls and text messaging.

14

c. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Mobile devices such as smartphones and tablet computers may also connect to other computers via wireless connections. Electronic contact can be made to literally millions of computers and smartphones and tablets around the world. Child pornography can therefore be easily, inexpensively and anonymously (through electronic communications) produced, distributed, and received by anyone with access to a computer or smartphone;

d. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. Electronic storage media of various types – to include computer hard drives, external hard drives, CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices which are plugged into a port on the computer – can store thousands of images or videos at very high resolution. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Some media storage devices can easily be concealed and carried on an individual's person. Smartphones and/or mobile phones are also almost always carried on an individual's person (or within their immediate dominion and control) and can additionally store media;

15

e.  The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion;

f.  Individuals also use online resources to retrieve and store child pornography. Some online services allow a user to set up an account with a remote computing service that may provide e-mail services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer, smartphone or external media in most cases; and

g.  As is the case with most digital technology, communications by way of computer or smartphone can be saved or stored on the computer or smartphone used for these purposes. Storing this information can be intentional (i.e., by saving an e-mail as a file on the computer or smartphone, or saving the location of one's favorite websites in, for example, "bookmarked" files). Digital information can also be retained unintentionally such as the traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer or smartphone user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

### Specifics of Search and Seizure of Computer Systems

18. As described above and in Attachment B, this application seeks permission to search for records that might be found either on **GRIMM's** person, in the **TARGET PREMISES,** and or in the **VEHICLE** in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media, such as a cellular phone, smartphone, or tablet. Thus, the warrants applied for would authorize the seizure of electronic storage media, on-site review, or the copying of electronically stored information for later review, all under Rule 41(e)(2)(B).

19. I submit if a computer or storage medium is found on **GRIMM's** person, in the **TARGET PREMISES,** and or in the **VEHICLE**, there is probable cause to believe records or images relevant to the ongoing investigation will be stored on said computer or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data;

17

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file;

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information;

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

20. As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrants, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any

18

storage medium found on **GRIMM's** person, in the **TARGET PREMISES,** and or in the **VEHICLE** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified;

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information,

19

communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that logs the following: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection

20

logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement);

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when;

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer

21

behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant;

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent;

f. I know that when an individual uses a computer to obtain or access child pornography, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

21. Based upon my training and experience and information provided to me by agents and others involved in the forensic examination of computers, I know computer data can be stored on a variety of computer systems and storage devices,

including external and internal hard drives, flash drives, thumb drives, micro SD

cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable

of storage, smartphones, floppy disks, compact disks, magnetic tapes, memory cards,

memory chips, and online or offsite storage servers maintained by corporations,

including but not limited to "cloud" storage. I also know that during the search of

the premises it is not always possible to search computer equipment and storage

devices for data for a number of reasons, including the following:

a. Searching computer systems is a highly technical process which requires specific

expertise and specialized equipment. There are so many types of computer

hardware and software in use today that it is impossible to bring to the search site

all of the technical manuals and specialized equipment necessary to conduct a

thorough search. In addition, it may also be necessary to consult with computer

personnel who have specific expertise in the type of computer, software website,

or operating system that is being searched;

b. Searching computer systems requires the use of precise, scientific procedures

which are designed to maintain the integrity of the evidence and to recover

"hidden," erased, compressed, encrypted, or password-protected data. Computer

hardware and storage devices may contain "booby traps" that destroy or alter

data if certain procedures are not scrupulously followed. Since computer data is

particularly vulnerable to inadvertent or intentional modification or destruction, a

controlled environment, such as a law enforcement laboratory, is essential to

23

conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

c. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

d. Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

22. Additionally, based upon my training and experience and information relayed to me by agents and others involved in the forensic examination of

24

computers, I know that routers, modems, and network equipment used to connect computers to the Internet often provide valuable evidence of, and are instrumentalities of, a crime. This is equally true of so-called "wireless routers," which create localized networks that allow individuals to connect to the Internet wirelessly. Though wireless networks may be "secured" (in that they require an individual to enter an alphanumeric key or password before gaining access to the network) or "unsecured" (in that an individual may access the wireless network without a key or password), wireless routers for both secured and unsecured wireless networks may yield significant evidence of, or serve as instrumentalities of, a crime—including, for example, serving as the instrument through which the perpetrator of the Internet-based crime connected to the Internet and, potentially, containing logging information regarding the time and date of a perpetrator's network activity as well as identifying information for the specific device(s) the perpetrator used to access the network. Moreover, I know individuals who have set up either a secured or unsecured wireless network in their residence are often among the primary users of that wireless network.

23. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrants and would authorize a on-site or later review of the media or information consistent with the warrants. The later review may require techniques, including but

not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrants.

## Conclusion

24. Based on the information set forth in this affidavit, I submit there is probable cause to believe violations of 18 U.S.C. §§ 2252A(a)(6) and (b)(1) (Distribution of Child Pornography to a Minor); 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Receipt/Distribution of Child Pornography); and 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of and Access with Intent to View Child Pornography) have been committed, and that evidence, instrumentalities, and/or contraband of these offenses, more fully described in Attachment B, are located at the sites described in Attachment A1, A2, and A3. I respectfully request that this Court issue search warrants for the locations described in Attachments A1, A2, and A3 authorizing the search and seizure of the items described in Attachment B.

25. I am aware the recovery of data by a computer forensic analyst takes significant time; much the way recovery of narcotics must later be forensically evaluated in a lab; digital evidence will also undergo a similar process. For this reason, the "return" inventory will contain a list of only the tangible items recovered from the premises. Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

Respectfully submitted,

Brian S. Dean
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to by phone on September ___5___, 2025.

CHRISTINE D. LITTLE
UNITED STATES MAGISTRATE JUDGE

27

## ATTACHMENT A3

### Property to be Searched

The property to be searched is a vehicle, Oklahoma tag: **AL7006**, VIN:

**3FA6P0H7XHR399136**. The vehicle is dark red colored 2017 Ford Fusion that is

registered to Allen Grimm and or Darrell Grimm.



## ATTACHMENT B

### Particular Things to be Seized

All items that constitute evidence, instrumentalities, and/or contraband, of

violations of 18 U.S.C. §§ 2252A(a)(6) and (b)(1) (Distribution of Child Pornography

to a Minor); 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Receipt/Distribution of Child

Pornography); and 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of and Access

with Intent to View Child Pornography) as it pertains to **DARRELL SHANNON**

**GRIMM**, including:

A. Images/videos/gifs of child pornography or child erotica; files containing

images/videos/gifs; and data of any type relating to the sexual exploitation of

minors or a sexual interest in children, material related to the possession thereof,

and data of any type related to any person employing, using, persuading,

inducing, enticing, or coercing any minor to engage in any sexually explicit

conduct for the purpose of producing any visual depiction of such conduct or for

the purpose of transmitting such visual depiction of such conduct, in any form

wherever it may be stored or found including, but not limited to:

    i. Any cellular telephone, smartphone, tablet, personal digital assistant,

    computer, computer system and related peripherals; computer hardware;

    computer software; tapes, cassettes, cartridges, streaming tape, commercial

    software and hardware, computer disks, disk drives, monitors, computer

    printers, modems, tape drives, disk application programs, data disks,

system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, monitors, printers, external storage devices, routers, modems, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to computer passwords and data security devices and computer-related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, or information pertaining to an interest in child pornography;

ii. Books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children;

iii. Originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children; and

iv. Stories, text-based files, motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children;

B. Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or pertaining to the sexual exploitation of minors or a sexual interest in children, that were transmitted or received using computer, cellular device, personal digital assistant, or some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

i. Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children;

ii. Books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children;

iii. Any and all records, documents, or materials, including any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States mail or by computer, any visual depiction of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 or relating to the sexual exploitation of minors or a sexual interest in children;

iv. Any and all records, documents, or materials, including any and all address books, names, and lists of names and addresses of minors visually depicted while engaging in sexually explicit conduct, defined in Title 18, United States Code, Section 2256; or relating to the sexual exploitation of minors or a sexual interest in children;

v. Any and all records of Internet usage including usernames and e-mail addresses and identities assumed for the purposes of communication on the Internet. These records may include billing and subscriber records, chat room logs, e-mail messages, and include electronic files in a computer and on other data storage mediums, including CDs or DVDs;

vi. Any physical keys, encryption devices, dongles and similar physical items necessary to access computer equipment, storage devices or data;

vii. Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data; and

viii. Files, records, programs, logs, electronic communications, scanning programs, financial records, hacking software, or router configuration software;

ix. Routers, modems, and network equipment used to connect computers to the Internet.

C. Credit card information including, but not limited to, bills and payment records, and including, but not limited to, records of internet access;

D. Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence;

E.  Records or other items which evidence ownership or use of computer equipment or any of the devices described in this attachment that are found in the above residence, including, but not limited to, sales receipts, bills for Internet access, and handwritten notes;

F.  Any and all adapters, chargers or other hardware items necessary to charge the battery, or to maintain the functioning of, any of the equipment described above; and

G.  Any data or materials establishing ownership, use or control of any computer equipment seized from **643 E. 42ⁿᵈ St. N., Tulsa, OK 74106,** including outbuilding and vehicles on the curtilage premises and any data or materials establishing ownership, use or control of any computer equipment seized from **a 2017 Ford Fusion Oklahoma AL7006.**

H.  Any and all information, correspondence (including emails and text messages), records, documents and/or other materials related to contacts, in whatever form, with minors involving the production, possession and/or distribution of child pornography and the attempt or act of educing, enticing, coercing, or persuading a minor to engage in sexual acts.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such

as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.